UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| TARI L. YOUNG )<br>          Plaintiff, )<br>          )<br>v.          )<br>          )<br>CAROLYN COLVIN, Acting )<br>Commissioner of Social Security, )<br>          Defendant. )| No. 13 CV 50025<br>Magistrate Judge Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tari L. Young brings this action under 42 U.S.C. § 405(g), seeking remand of the decision denying her social security disability benefits. For the reasons set forth below, the decision is affirmed.

**BACKGROUND**

On December 28, 2009, plaintiff filed applications for disability insurance benefits and supplemental security income. R. 10. She alleges that she has been unable to work since June 25, 2008 because of her fibromyalgia, chronic obstructive pulmonary disease, and depression, among other things. Dkt. # 14 at 1.

On July 21, 2011, a hearing was held before an administrative law judge ("ALJ"). R. 30. Plaintiff testified that she was 56 years old, weighed 240 pounds, and has three adult children. R. 37, 42. She graduated from high school with a GED and went to college four years part time but did not graduate: "I almost finished but I didn't make it." R. 37.

Her last job was as a claims verifier at Rockford Mutual Insurance Company where she did various jobs such as faxing, running claims program, pulling files, running errands, and typing letters and memos. R. 39. After working in this job for approximately 14 years, plaintiff

quit on June 25, 2008. R. 39-40. Plaintiff testified that she quit because of health problems, but then added that she "had a co-worker [who] was bullying [her] too." R. 40.

Plaintiff testified that she gets out of breath very easily and uses her inhaler quite a bit. R. 43. She can walk a half a block before she is out of breath. She had seen a counselor, Kathleen Freeburg, about a half a dozen times. R. 45, 315. She was taking the generic form of Paxil for her depression. The Paxil helped her, although she sometimes wonders whether she needs "a little bit more." R. 46. When she is depressed, she cries uncontrollably for quite a while and then works through it. She socializes with her sister and a girlfriend and goes to church when she is able to get a car. R. 46-47.

Plaintiff testified that she has an albuterol inhaler and was given samples from the doctor because she did not have the money to get any. She never used a nebulizer, but wonders whether she needs one. When asked whether she has ever had to gone to the hospital in the last two or three years because of breathing issues, she stated: "No, I've kept it pretty good under control with the Advair." R. 51.

The ALJ called a medical expert, Dr. Laura Rosch, to testify. She is a board-certified internist. R. 51-52. Her testimony is discussed further in Section II below.

On September 20, 2011, the ALJ issued a decision finding plaintiff not disabled. At step two, the ALJ found that plaintiff suffered from several severe impairments, including fibromyalgia, obesity, and chronic obstructive pulmonary disease. R. 12. However, the ALJ concluded that plaintiff's depression did not qualify as a severe impairment because it did not cause "more than minimal limitation in [plaintiff's] ability to perform basic mental work activities." R. 13. The ALJ also concluded that plaintiff's depression would not meet the Section 12 listings for mental impairments. The ALJ found that plaintiff had only mild limitations in

activities of daily living, social functioning, and concentration, persistence or pace. R. 13-14. This issue is discussed further in Section I below. The ALJ found that plaintiff had the residual functional capacity to perform sedentary work, subject to certain limitations. R.15.

## DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

In this appeal, plaintiff only raises two arguments, the first focusing on her depression and the second on her chronic obstructive pulmonary disease. Neither justifies a remand.

**I.      The Decision Not To Call A Psychological Expert.**

Plaintiff argues that the ALJ should have called a psychological expert. This argument is undeveloped and cursory, basically consisting of four long quotations strung together. Dkt. # 14 at pp. 5-7. The first quotation is the portion of the ALJ's opinion finding that plaintiff only had a mild limitation in the functional area of "concentration, persistence or pace." The second is part of a one-paragraph letter written by a therapist named Kathleen Freeburg who plaintiff saw on eight occasions over a several year period. The third is from the portion of the hearing transcript where the ALJ questioned the vocational expert about certain hypotheticals. The fourth is the portion of the hearing transcript where Dr. Rosch stated that she was not a psychiatrist and thus could not opine about psychiatric listings. Aside from these four quotations, plaintiff only adds this conclusory sentence: "Thus a psychological medical expert was needed at the hearing to clarify the record." Dkt. # 14 at p. 7. The single word "thus" has a large weight on its shoulders, as plaintiff does not provide any explanation of what the four quotes mean, does not connect them to any rule or regulation, and does not cite to any case or legal authority.

This sparse presentation leaves this Court in the position of having to piece together plaintiff's argument. Plaintiff is requesting a psychiatric expert. This suggests that plaintiff is focusing on her depression, as it is the only psychological impairment mentioned in the record. Plaintiff quotes the portion of the opinion concerning the ALJ's finding that plaintiff only had a mild limitation in the area of "concentration, persistence, or pace." The latter phrase is one of the paragraph B criteria under the Section 12 mental health listings for her depression. These points suggest that plaintiff is arguing that a psychiatric expert was needed to opine about how severe her limitations were in the category of concentration, persistence, or pace. The Court will therefore focus its analysis on this question.

This Court cannot conclude that the ALJ was obligated to call an expert on this issue for the simple reason that the ALJ's finding of a mild impairment was based on the opinions of two psychiatrists. First, the ALJ relied on the four-page report of Dr. Peggau. R. 289-292. As the ALJ discussed in the opinion, Dr. Peggau found (among other things) that plaintiff's mood was euthymic, that she had a global assessment of functioning ("GAF") of 90, and that her depression was getting better. R. 13. Second, later in the opinion, the ALJ relied on the opinion of Dr. Donna Hudspeth, a state agency psychiatrist, who filled out a Psychiatric Review Technique form stating that plaintiff only had mild limitations in the area of concentration, persistence or pace. R. 19; Ex. 7F; R. 304.

In this type of situation, where the ALJ has clearly relied on agency medical experts to determine that plaintiff did not meet a listing, there is no requirement that the ALJ call yet another medical expert. *See Youngblood v. Colvin*, 2015 WL 667993, *4 (S.D. Ind. Feb. 17, 2015) (the ALJ did not err in failing to obtain a medical advisor to testify about Section 12 listings: "the ALJ need not summon a medical expert to testify at the hearing if a medical expert has signed the [agency forms] that address medical equivalency") (citing Seventh Circuit cases); *Sutherlin v. Colvin*, 2015 WL 1046101, *5 (S.D. Ind. March 10, 2015) (no error in not calling medical expert because ALJ could properly rely on two state-agency psychologists and because the plaintiff failed to meet his burden of showing why an expert was needed); *Tichenor v. Colvin*, 2015 WL 1455702, *6 (S.D. Ind. March 30, 2015) ("An ALJ is not required to seek the opinion of additional medical experts, and the decision to summon a medical expert is discretionary.") (relying on 20 C.F.R. § 416.927(e)(2)(iii)); *see also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (the ALJ may rely on reports of state agency physicians to "conclusively establish" that claimant did not meet a listing requirement).

Plaintiff believes the letter from therapist Freeburg was compelling enough that the ALJ should have called a psychiatric expert to clarify the record. This Court is not persuaded. As an initial matter, the only comment potentially relevant is Ms. Freeburg's statement that plaintiff "was experiencing some difficulty with memory and sustained concentration." R. 315. This statement does not provide much detail, and the reference to "some" difficulty is vague. In any event, the ALJ considered this letter and offered several reasons why the report from Dr. Peggau was more persuasive. These include: Dr. Peggau was a psychiatrist and Ms. Freeburg was a social worker who was not an acceptable medical source; Dr. Peggau assessed plaintiff's GAF as 90, "which fails to suggest more than minimal functional significance;" and the "focus of [plaintiff's] counseling sessions [with Ms. Freeburg] [was] to provide coping skills for fibromyalgia."[1] R. 13. The ALJ expressed no doubt or uncertainty about the conclusion that plaintiff did not meet the listing for depression. In fact, as noted above, the ALJ did not even find that plaintiff's depression qualified as a severe impairment at step two, a standard that is typically easier to meet than the step three listing standards.

More broadly, calling an expert would not have changed the final outcome because, even if an expert could persuade the ALJ to find that plaintiff had marked, rather than merely mild, limitations in concentration, persistence, or pace, this would not be enough to qualify under a Section 12 listing. Plaintiff would also have to show that she had marked limitations in at least one of the other paragraph B criteria—either activities of daily living or social interaction. Yet, in her two briefs to this Court, plaintiff has never offered any argument challenging the ALJ's finding that she only had mild limitations in these two categories.

---

[1] It is worth noting that Dr. Peggau did not diagnose plaintiff with any form of depression, but listed "nicotine dependence" as her only Axis I diagnosis. R. 291. He stated: "she *had* some depression but it is resolved." *Id.* (emphasis in original).

## II. The Decision Not To Order A Second Spirometry Test.

Plaintiff's second argument focuses on her chronic obstructive pulmonary disease ("COPD") and whether she qualified as disabled under a Section 3 listing for respiratory conditions. Evaluation of this argument is complicated slightly by the fact that the ALJ in the opinion referred to the wrong Section 3 listing.

To recap the relevant facts, before applying for disability benefits, plaintiff visited a pulmonologist named Dr. Theodore Ingrassia in 2008 and 2009. He treated plaintiff and performed at least three spirometry tests. This test includes a component called the one-second forced expiratory volume test, or " FEV1." This test is used by the Social Security Administration in two of its respiratory listings: Section 3.02 ("Chronic pulmonary insufficiency") and Section 3.04 ("Cystic fibrosis"). Both sections contain a numerical table that correlates the claimant's height range to a FEV1 number. If the claimant's FEV1 number is at or below the threshold FEV1 number for her height, then the claimant qualifies under that listing. Although the two sections use the same type of table, the FEV1 values are different. Section 3.04 has higher threshold amounts, meaning that it is easier to qualify under this section.

After plaintiff applied for disability benefits in December 2009, someone at the Social Security Administration ordered that plaintiff be given another FEV1 test. It is not known why the test was ordered, but plaintiff clams that it was because the "reading on spirometries by her treating pulmonologist, Dr. Ingrassia, were quite low (though shy of Listings level)." Dkt. # 22 at p.1. On May 7, 2010, a new FEV1 test was performed by Dr. Kamlesh Ramchandani. The FEV1 number from this test was 1.3. R. 316. This number (if considered valid) qualify plaintiff as disabled under Section 3.04 (if she in fact had cystic fibrosis) because the threshold for plaintiff's

height is 1.65. However, a 1.3 FEV1 would not be enough to qualify under Section 3.02, which has a threshold of 1.25.

At the hearing, the medical expert, Dr. Laura Rosch, testified that the FEV1 number from the test conducted by Dr. Ramchandani appeared to meet the listing level for Section 3.04. Everyone now agrees that Dr. Rosch inadvertently referred to the wrong Section 3 listing. However, Dr. Rosch further concluded that this test was invalid and could not be relied on because it did not meet various requirements imposed by the Social Security Administration before a spirometry test is considered valid. *See* SSR Section 3.0. The failures cited by Dr. Rosch were: the report did not include volume loops; there was a variance of greater than 5% in the reported seconds; there was not a minimum of three trials of at least six seconds on the expiratory base; and there was no description of the effort made by the claimant. R. 59-60.

The ALJ adopted the conclusions of Dr. Rosch. R. 19. Specifically, the ALJ first observed that the FEV1 number from the test conducted by Dr. Ramchandani "may appear, on the surface, to medically equal listing 3.04A, the listing for cystic fibrosis, given the claimant's height of 64 inches and best FEV1 value of 1.3." R. 14-15. Like Dr. Rosch, the ALJ applied the wrong part of Section 3. The ALJ then concluded, again agreeing with Dr. Rosch, that the test was not valid because certain requirements in testing protocol had not been followed.

Plaintiff argues that the ALJ should have ordered a new spirometry exam after the hearing. This argument, like her first, is undeveloped, again consisting of a series of long quotations with little or no analysis and no legal authority. As best this Court can determine, plaintiff is only challenging whether, at step three, her COPD qualified under a Section 3 listings.

After reviewing the record, the Court does not find that a remand is warranted. Through the briefing process, the parties now agree the following facts are undisputed. First, the only

potentially applicable listing is Section 3.02 for chronic pulmonary conditions. There has never been any claim that plaintiff has cystic fibrosis. Accordingly, as set forth in her reply brief, plaintiff agrees that Section 3.04 (cystic fibrosis) is "admittedly irrelevant." Dkt. # 22 at p.1. Second, based on the FEV1 tests performed by plaintiff's own treating pulmonologist (Dr. Ingrassia), plaintiff did not meet the requirements of Section 3.02. Third, after reviewing these tests and other medical evidence, Dr. Rosch also concluded that plaintiff did not meet any of the pulmonary listings. *See* R. 56 (in this portion of her testimony she cites to both Sections 3.02 and 3.04).

In sum, based on the current record, but excluding the results from the Ramchandani test, there is no possibility that if the ALJ had applied the *more rigorous* standard of Section 3.02, the ALJ would have concluded that plaintiff met that listing. Both Sections 3.02 and 3.04 are straightforward with no discretion involved. They simply involve looking up numbers on a table. Plaintiff does not dispute this conclusion.[2]

Plaintiff argues instead that, after Dr. Rosch testified that Dr. Ramchandani's FEV1 test did not meet social security standards, the ALJ should have then ordered a new spirometry test. This Court disagrees. The evidence above, which includes two medical opinions, is sufficient. As discussed in Section I, the "decision to summon a medical expert is discretionary," and while the ALJ could have called for another test, this Court cannot find fault based on the current record if the ALJ simply "chose not to do so." *See, e.g.,Tichenor,* 2015 WL 1455702 at *6.

---

[2] Even if the Ramchandani test results were included, they would only add more evidence that plaintiff did not meet the requirements of Section 3.02. It should be noted that, during the hearing, plaintiff's counsel seemed surprised that Dr. Rosch would object to the tests results from Dr. Ramchandani. Counsel pointed out that Dr. Ramchandani has been providing these consultative examinations for 20 years. The impression created by these comments is that plaintiff's counsel, at least during the hearing, did not believe that the FEV1 score from Dr. Ramchandani was inaccurate or unreliable.

Plaintiff has not cited to any case suggesting that an expert must be called in this type of situation.

Plaintiff's only argument is this sentence in her reply brief: "it would seem that the Defendant, who earlier wanted a consulting spirometry done, would still want one done – so simple would it have been for the Administrative Law Judge to order a post-hearing one." Dkt. #22 at p. 1-2. This argument is speculative. For one thing, as the generic reference to "the Defendant" suggests, it does not appear that it was the ALJ who initially made the decision to order the first spirometry test, which was done over a year before the hearing. Even if the ALJ had made the earlier decision, this does not mean that the ALJ was bound by that decision. Instead, the ALJ reasonably could have concluded, after listening to testimony at the hearing and after reviewing all the medical evidence, that the current record was clear enough and provided substantial supported for a finding of no disability.

As the government argues in its response brief, the ALJ did not believe that plaintiff had serious pulmonary deficiencies. The ALJ noted the following: (i) plaintiff's COPD never required hospitalization or emergency treatment (R. 18); (ii) plaintiff never used a nebulizer or other breathing machine (R. 18); (iii) when plaintiff saw her family physician on October 24, 2008 she denied having any respiratory symptoms (R. 16) (iv) plaintiff rarely visited Dr. Ingrassia who recommended no treatment aside from quitting smoking (R. 16); (v) the FEV1 tests done by Dr. Ingrassia, which did not even meet the listing, were "all obtained pre-treatment, with no post-bronchodilator responses recorded" (R. 15); (vi) "Dr. Ingrassia notably declined to provide a medical source statement, despite [plaintiff's] express request" (R. 19); and (vii) plaintiff provided inconsistent testimony about why she quit her job of 14 years and about her daily activities . Dkt. # 21 at p.9. Plaintiff does not address any of this evidence in her two

briefs. This evidence further confirms that the ALJ did not find that another spirometry test was called for given the evidence already in the record. This Court cannot second-guess that decision.

## CONCLUSION

For the reasons given, plaintiff's motion for summary judgment is denied, the government's motion is granted, and the decision of the ALJ is affirmed.

Date: April 16, 2015         By: _____
                                 Iain D. Johnston
                                 United States Magistrate Judge